PAUL L. BROWN, Department of Administration
You have asked for my opinion on the following two-part question: *Page 225 
"Does the fact that the bid specifications asked for the name of the sub-contractor for casework and laboratory equipment as an informational bid make the submission of the sub-contractor's name a part of the bid and form the basis of the award of the contract, and is the Milwaukee Equipment Company right in their contention that no other sub-contractor can be considered for the sub-contract?"
The answer is in the negative.
The following facts appear:
Bids were opened on December 22, 1971, at 2:00 p.m., on Bureau of Facilities Management Project No. 6901-20, relating to the Physical Science Addition to the University of Wisconsin at Stevens Point. The bureau's bid form asked for the "Name of subcontractor for casework and laboratory equipment, Section 1160."
The Hoffman Company, Incorporated, hereinafter referred to as Hoffman, was a successful prime contractor on the project and listed "Milwaukee Equipment" as its subcontractor for section 1160 work with its initial bid proposal for general construction work dated December 22, 1971. Hoffman was awarded this phase of the work on December 31, 1971. Subsequently, Hoffman submitted a list of subcontractors on February 3, 1972, in compliance with paragraph 34B on page 20 of the General Conditions of the Contract which requires:
"B. The Contractor shall not award any work to any Subcontractor without prior written approval of the Bureau in behalf of the Owner, which approval will not be given until the Contractor submits to the Bureau a written statement concerning the proposed award to the Subcontractor, which statement shall contain such information as the Bureau may require."
Hoffman listed under Section 1160, Casework Laboratory Equipment (ABC Scientific) "Valley School Suppliers. Inc., Appleton, Wisconsin." The following explanation was stated in Hoffman's letter of February 3, 1972, to the state's architect: *Page 226 
"The Milwaukee Equipment Company was listed in error on our bid form to furnish Section 1160. A more complete analysis of proposals indicated the low bidder was Valley School Suppliers, Inc."
Approval of Valley School Suppliers, Inc., was withheld pending the results of further tests, reports and investigations, according to a statement made by the state's architect in a letter dated February 15, 1972. Based on the results of tests made by the University of Wisconsin at Stevens Point, the state's architect did not approve ABC's Artcolite Top material, as stated in its letter of March 9, 1972. However, Valley School Suppliers, Inc., agreed to furnish the solid modified epoxy resin tops as originally specified, thereby eliminating that problem. Milwaukee Equipment and Valley School Suppliers, Inc., are both acceptable subcontractors and able to perform to the satisfaction of the state. The state would not stand to gain or lose in the quality or cost of performance regardless of which subcontractor was utilized.
The controlling statute involved is see. 16.855 (13), Stats., which provides:
"(13) (a) A list of subcontractors shall not be required to be submitted with the bid. The department may require the successful bidder to submit in writing the names of prospective subcontractors for the department's approval before the award of a contract to the prime contractor
"(b) All subcontractors must be approved in writing by the department prior to their employment. Requests for approval of prospective subcontractors shall be in writing.
"(c) Changes may be made in the list of subcontractors, with the agreement of the department and the prime contractor, when in the opinion of the department it is in the best interests of the state to require the change."
The explanation of this statute contained in 1969 Senate Bill 601 provides:
"16.855 (13): A bidder may be required to submit a list of subcontractors to the department before the award of the contract. All subcontractors must be approved in writing before they can begin work for the department. The prime contractor is *Page 227 
permitted to make a change in subcontractors only with approval of the department. The department may require a change in subcontractors when it is in the best interests of the state."
That portion of the department's bid proposal which asked for the name of the subcontractor was contrary to the first sentence of sec. 16.855 (13) (a), Stats., which provides: "A list of subcontractors shall not be required to be submitted with the bid." Although the department asked for only one subcontractor instead of a list of all subcontractors, I do not consider this distinction sufficient to ignore the legislative prohibition of the statute. Ordinarily, the reason such a list would be requested with a bid would be to help prevent "bid shopping," a practice whereby a prime contractor on a project uses a low bid from one subcontractor to pressure other subcontractors to submit even lower bids. See "Bid Shopping," Words and Phrases.
Section 16.855 (13), Stats., prohibits the department from asking for the names of subcontractors to be submitted with the bid, thereby allowing "bid shopping" to occur. The same section permits the department to ask for the names of subcontractors subsequent to the bid opening and prior to the award of the contract to the prime contractor. Such a request was not made by the department, unless the improper request in the bid form could be so interpreted. In my opinion, since the department should not have asked for this information in the bid form, no significance can be attached to its presence. The situation must be viewed as though the department never made the request in the first place.
The list of subcontractors, which was submitted on February 3, 1972, was in response to paragraph 34B on page 20 of the General Conditions of the Contract, which is placed in the contract to meet the requirements of sec. 16.855 (13) (b), Stats. The paragraph at the end of that letter was an unnecessary request for a "change" of subcontractors in compliance with sec. 16.855
(13) (c), Stats. The reason it was unnecessary is because in my view no "change" occurred, the list of February 3, 1972, being the only valid list submitted to the department. That list was not submitted for the purpose of approving the initial award to the prime contractor, but for the purpose of satisfying the requirement that requests for approval of prospective subcontractors shall be in writing and must be approved by the *Page 228 
department prior to their employment by the prime contractor. There was no valid list of subcontractors requested by and submitted to the department prior to the award of the contract to the prime contractor; nor is there any evidence that the award of the contract was actually made to Hoffman on the strength of Milwaukee Equipment being the subcontractor for a phase of the work.
This situation is distinguished from that in Druml Co. v. Knapp
(1959), 6 Wis.2d 418, 94 N.W.2d 615, where the statute (sec. 66.29 (7) Stats.) required:
". . . a full and complete list of all the proposed subcontractors . . . and the class of work to be performed by each, as enumerated and called for in bidding documents which list shall not be added to nor altered without the written consent of the municipality."
Although the municipal bidding statute was the basis for the state bidding statute there are significant differences between the two, and this is one of them.
The court concluded in Druml, supra, at page 423:
". . . We conclude that this means that as soon as the bid is opened and accepted, the bidder is bound to use a particular subcontractor for each class of work indicated unless the commissioner consents to a change. Obviously, the successful bidder must at some time make his choice of which of several possible firms will be subcontractors for a particular portion of the work and the device of requiring a list which is binding upon the bidder seems fairly designed to compel that the choice be made by the time of bidding.
"Apparently the legislature still considers that it may be in the public interest that the identity of the subcontractors be determined at the time of bidding, although in 1955 it relaxed the statute from a command to permission.
". . .Competitive bidding among them after the contract has been awarded tends to benefit the contractor, not the public." *Page 229 
In the instant case, the time of commitment for Hoffman was on February 3, 1972, upon the submission of its list of all the subcontractors it desired to be approved pursuant to sec. 16.855
(13) (b), Stats. Any change in that list would have to have been made pursuant to sec. 16.855 (13) (c), Stats. However, since no such change in that list was ever sought, sec. 16.855 (13) (c), Stats., is not applicable here.
Finally, some concern has been expressed that sec. 16.855 (1), Stats., is being ignored. That section provides:
"(1) The department shall let by contract to the lowest qualified responsible bidder all construction work when the estimated construction cost of the project exceeds $15,000. In the absence of compelling reasons to the contrary, preference shall be given to Wisconsin-based firms."
It must be noted that the department is contracting with Hoffman and not with Hoffman's subcontractor, and the applicability of that statute is highly questionable under these circumstances, even if we were to assume that Milwaukee Equipment has a greater nexus with the state of Wisconsin.
All subcontractors, including Valley School Supplies, Inc., were approved by the department on March 24, 1972, and it is my understanding that Valley School Supplies. Inc., has already performed certain services for Hoffman. There is no legal basis for requiring Hoffman to use Milwaukee Equipment instead of Valley School Supplies, Inc.
RWW:APH